Argued and submitted November 3, 2011, property division vacated and remanded; otherwise affirmed May 15, 2013

In the Matter of the Marriage of

Philip KAPTUR,
*Petitioner-Respondent,*
*and*

Loreen KAPTUR,
*Respondent-Appellant.*

Washington County Circuit Court
C074277DRC; A143861

302 P3d 819

George W. Kelly argued the cause and filed the briefs for appellant.

David C. Olsson argued the cause for respondent. With him on the brief was Giers Olsson PC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Wife appeals a dissolution judgment, challenging the trial court's property division. In particular, wife quarrels with two components of the trial court's property division. First, wife contends that the equalizing payment included in the judgment was too large based on the trial court's incorrect "finding that the parties had a $33,600 debt on their home." Wife also asserts that the "court erred in ordering a [Qualified Domestic Relations Order (QDRO)] giving to husband $21,500 from wife's retirement" accounts. For the reasons set forth below, we vacate and remand the property division and otherwise affirm the dissolution judgment.

The background facts are undisputed. The parties married in September 2002 and separated in January 2008. Although they have children from previous relationships, the parties have no joint children. At the time of the marriage, wife owned a home valued at approximately $175,000 and subject to $70,000 of debt. One issue in the divorce was the division of the parties' property, including the home and several retirement accounts, as well as debts consisting of credit card balances, a mortgage, and a home equity line of credit.

At the end of the trial, the court awarded the house to wife and announced that the equity in the house at the time of the marriage was premarital property to which wife was entitled. However, the court determined that the appreciation in the house during the marriage should be divided between the parties:

> "[T]he fair market value of the house in 2002 was [$]175,000, had $70,000 of obligation wrapped up in it, leaving a fair— equity of $105,000. The fair market value today is $260,000, with a $33,600 obligation. So, really, the—today's equity is [$]226,400. We take from that the [$]105,000 that Wife had before the date of marriage, leaving a divisible portion of [$]121,400. So that means, Husband's going to start off with [$]60,700 out of the house."

The court also concluded that several credit card balances were joint obligations and that wife had improperly taken and used certain funds while the parties were separated.

Based on all of those findings, the court concluded "that Husband's entitled to Judgment against Wife in the amount of $80,000." The dissolution judgment ultimately entered by the trial court contained an equalizing award of that amount.

With respect to the retirement funds, the court determined that the marital portion of the funds would be equalized through a QDRO. The court did not make a finding regarding the value of the marital portion of the retirement funds. After the trial, but before the entry of the dissolution judgment, the court held additional hearings in which the parties addressed the division of the retirement funds. The parties presented the court with differing amounts that they argued constituted the marital portion of the retirement accounts to be divided. The court reiterated:

"I'm not looking at who made contributions, when, where, how, except premarital. So if it's premarital, I'm going to pull that portion out. If there's a growth of the premarital portion, there's growth of the premarital portion, and that's going to be just lumped in with the rest of it because there's no real way of ascertaining what's growth and diminishment, and that sort of thing, without an—without having a—a headache.

"* * * * *

"* * * So, I'm just subtracting out those dollars and it should be the simplest thing in the world to say, 'Well, on this date I have this much in the account before I got married and then that part comes out to me.'"

At a later hearing regarding the form of judgment, the division of the retirement accounts was discussed again. The court stated that it had determined "that husband's premarital E*TRADE and * * * rollover IRA was $23,000." Pursuant to that finding, "the first [$]23,000 came out of the E*TRADE and went to Husband; the rest was divided 50/50. So 50/50, rather than a dollar amount." The court instructed husband's attorney to prepare the judgment. The dissolution judgment submitted by husband's attorney and entered by the trial court provided, as part of the property awarded to husband, that husband would receive "[h]is retirement account and an equalization of [wife]'s retirement account

\*\*\*. The equalizing amount shall be $21,500. Said amount shall be transferred pursuant to a QDRO, the cost of which shall be equally divided between the parties."

As noted, in her first assignment of error, wife asserts that the trial court's equalizing award of $80,000 is too large. Specifically, according to wife, that equalizing award "is predicated on the court having used $33,600 as the amount of the parties' mortgage"; however, wife contends that it was undisputed that the mortgage at the time of trial was approximately twice that amount. Husband first responds that wife's contention is not preserved and that, therefore, we should not address it on appeal.

Ordinarily, this court will not consider an issue on appeal unless it was first presented to the trial court. ORAP 5.45(1). The preservation requirement is designed to apprise the trial court of a party's position so that the court can consider it, to avoid surprise and unfairness to the opposing party, and to foster full development of the record. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). The "determination whether a particular issue was preserved for appeal is a 'practical one'; it will depend on whether the policies behind the preservation requirement—judicial efficiency, full development of the record, and procedural fairness to the parties and the trial court—are met in an individual case." *Charles v. Palomo*, 347 Or 695, 700, 227 P3d 737 (2010) (quoting *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009)). We will consider "an issue advanced by a party on [appeal] as long as that party raised the issue below with enough particularity to assure that the trial court was able to 'identify its alleged error' so as to 'consider and correct the error immediately, if correction is warranted.'" *Id.* (quoting *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)). Parties are not, however, "required to repeat their objections after the trial court has ruled against them." *Id.* at 701-02.

Here, in husband's view, wife failed to preserve the asserted error because "during the seven months following the arising of the alleged error, Wife referred to the alleged error—if at all—only in the most general terms[.]" Wife responds that her submissions to the court set forth the correct dollar amount of debt on the house, and, in addition, in

his own submission, husband "agreed with those numbers." Under the circumstances, she asserts that the alleged error was sufficiently preserved.

Wife presented evidence at trial that the debt on the parties' home was approximately $68,000. However, as noted, in its factual findings the trial court stated that the debt on the house at the time of trial was $33,600. After the court announced its ruling, as husband notes, wife did not immediately assert that the trial court's finding regarding the debt on the house was incorrect. However, after the trial and before the judgment was entered, wife made submissions to the court that set forth the correct amount of debt on the house at the time of trial.[1] In one submission, she noted that

> "[t]he Court's determination was that the 2009 fair market value of the house was $260,000. After subtracting the 2009 loan debt in the amount of $67,027.32 from the $260,000, fair market value, the 2009 equity in the home was $192,972.62."

Additionally, in another document, wife stated that the "current equity" in the house was $192,972.68. Wife also submitted calculation sheets and a bank statement, which the court admitted into evidence, that set forth the 2009 loan debt on the house as being between $67,000 and $68,000. As wife points out, in his own post-trial (but prejudgment) submission to the trial court, husband also set forth the value of the house at the time of trial as $260,000 and the debt as $68,000.

Although neither party specifically informed the court after trial that its finding regarding the debt on the house was incorrect, their post-trial submissions set forth the correct number. Wife did specifically assert to the trial court that its calculation of the premarital equity in the house was incorrect. Moreover, as wife observes, with respect to the amount of debt on the house at the time of trial, both parties appeared to be in agreement regarding the correct amount, and the documents and calculations

---

[1] The parties submitted letters to the court, along with additional documents. The trial court admitted those submissions into evidence and they are part of the record on appeal.

that they submitted to the court set forth and relied on that amount.

Under the circumstances, we conclude that wife sufficiently preserved her claim of error. She presented evidence regarding the debt on the house at the time of trial. Furthermore, after the court made a finding at odds with that evidence, wife (and husband), though not necessarily required to do so, submitted additional materials to the court both stating and demonstrating the amount of debt on the house. In our view, the policies underlying the preservation requirement were served in this case. The issue that wife seeks to have us address on appeal was put before the trial court such that the court should have been able to identify and correct the alleged error.

On the merits, wife contends that there is no evidence to support the trial court's finding of $33,600 in debt on the house at the time of trial and that the equalizing award was based, in part, on that erroneous finding.[2] Husband counters that the trial court did not base its judgment on any specific calculation and points to other circumstances that he contends support the equalizing award. We agree with wife.

The court, as noted, specifically found that wife's equity in the house at the time of the marriage was $105,000. It found further that the fair market value at the time of

---

[2] As husband points out, wife does not request *de novo* review in this case. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(a) ("In those proceedings in which the Court of Appeals has discretion to try the cause anew on the record and the appellant seeks the have the court exercise that discretion, the appellant shall concisely state the reasons why the court should do so."). Given that wife does not seek *de novo* review and in light of the "presumption against the exercise of discretion" to conduct such a review, ORAP 5.40(8)(c), we review the factual findings at issue in this case to determine whether they are supported by any evidence. *See Morton and Morton*, 252 Or App 525, 527, 287 P3d 1227 (2012) ("[W]e are bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record ***.").

Husband suggests that the court's oral remarks regarding the fair market value of and obligations on the house do not constitute factual findings. However, the court specifically characterized its discussion of the equity in the house as "findings of fact." Thus, we reject husband's position on that point and treat the court's determinations as factual findings for purposes of our review.

trial was "$260,000, with a $33,600 obligation." However, there is no evidence in the record to support the latter figure. Rather, all the evidence (and both parties' submissions after the trial) demonstrates that the debt on the house was about twice the amount found by the trial court.

Given its incorrect understanding of the debt, the court concluded that the equity in the house at the time of trial was $226,400, and then subtracted from that amount "the [$]105,000 that Wife had before the date of marriage, leaving a divisible portion of [$]121,400. So that means, Husband's going to start off with [$]60,700 out of the house." That calculation formed the basis for a substantial portion of the $80,000 equalizing award. Given that the trial court's finding underlying the equalizing award regarding the debt on the house is not supported by evidence in the record, we conclude that it is appropriate to remand the case for the trial court to determine a just and proper division of property in view of the actual amount of equity in the house at the time of trial. *Kunze and Kunze*, 337 Or 122, 135, 92 P3d 100 (2004) (under ORS 107.105(1)(f), the court must determine a division of marital property that is "just and proper in all the circumstances").

As noted, in her second assignment of error, wife challenges the portion of the property division in which the trial court awarded husband $21,500 from wife's retirement accounts. She notes that the trial court ruled that each party would receive his or her own retirement funds and that the marital portion of the retirement accounts was to be equalized between the parties. However, according to wife, the portion of the written judgment that awards husband $21,500 from wife's retirement account is entirely inconsistent with that ruling. Furthermore, she asserts that the court made that order "by signing a judgment two days after it was submitted by husband's attorney, (without giving wife's attorney any opportunity to object), and without at any time previously telling the parties that it was doing anything other than what it ordered from the bench * * *."

Husband responds that wife failed to preserve the error. With respect to the substance of wife's argument, husband does not appear to dispute that the portion of the

judgment relating to the QDRO is inconsistent with the trial court's stated intentions regarding division of the retirement accounts. Instead, he asserts that the court could have decided not to award wife any of his retirement accounts because, in his view, they lost "virtually all of their pre-marital value during the marriage." Furthermore, according to husband, "because Wife's * * * account, acquired during the marriage and funded by joint funds, was the only account to grow, and was worth $44,000 or $55,000 * * * the judgment correctly awarded Husband half of it." Because we have determined, as discussed above, that the property division portion of the judgment must be vacated and remanded, we need not address the parties' contentions regarding the retirement accounts. The trial court, on remand, must determine a just and proper division of property under all the circumstances and will be able to consider an appropriate division of the parties' retirement accounts as part of that determination.

Property division vacated and remanded; otherwise affirmed.