Argued and submitted February 23, affirmed December 8, 2021

Clifford STEDMAN,
*Plaintiff-Appellant,*
*v.*
STATE OF OREGON,
acting by and through
Department of Forestry, a state agency,
*Defendant-Respondent.*

Tillamook County Circuit Court
19CV21735; A173889

502 P3d 234

Plaintiff appeals from a judgment dismissing his negligence claim for personal injuries on state land, which he sustained in an accident on his all-terrain vehicle (ATV). The trial court granted the state's motion for summary judgment based on the state's claim of recreational immunity under ORS 105.682(1). Plaintiff assigns error to that ruling, arguing that an exception to the recreational immunity doctrine applies because his purchase of an ATV operating permit was a charge, as defined in ORS 105.672(1), for permission to use the land for recreational purposes under ORS 105.688(3). *Held*: The fee for an ATV operating permit is not a charge for use of the land where plaintiff was injured but is instead in the nature of a vehicle registration fee. The trial court did not err in concluding that the state was entitled to recreational immunity or by granting summary judgment on that basis.

Affirmed.

Mari Garric Trevino, Judge.

Melissa Hopkins argued the cause for appellant. Also on the briefs was Law Offices of Judy Snyder.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

Plaintiff appeals from a judgment dismissing his negligence claim for personal injuries on state land. The trial court granted the state's motion for summary judgment based on the state's claim of recreational immunity under ORS 105.682(1). Plaintiff assigns error to that ruling, arguing that immunity does not apply because plaintiff purchased an operating permit for an all-terrain vehicle (ATV), and, in his view, the fee for that permit constitutes a charge for permission to use the land for purposes of ORS 105.672(1), which renders immunity inapplicable under ORS 105.688(3). We set forth those provisions later. We conclude that the fee for an ATV operating permit is not a charge for the use of the land where plaintiff was injured but is instead in the nature of a vehicle registration fee. We affirm.

Summary judgment is permitted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. We view the facts in the light most favorable to plaintiff as the non-moving party, and we review a decision allowing summary judgment for legal error. *Towe v. Sacagawea, Inc.*, 357 Or 74, 95-96, 347 P3d 766 (2015). We state the facts in light of that standard. Our task here is a matter of statutory construction, which we review for errors of law. *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015).

Plaintiff bought an ATV operating permit from the Oregon Parks and Recreation Department (OPRD) for his ATV. He received an ATV-permit sticker which he affixed to the rear of his Raptor 660 ATV. He also bought an ATV permit for his mini dirt-bike; and he had bought a separate ATV permit when he had a sandrail ATV. He understood that "you have to have like ATV permits and for [*sic*] any vehicle you ride."

On August 19, 2017, plaintiff entered the Beaver Dam Stockpile area of the Tillamook State Forest. He did not pay anything on that day to go into the area. The area features trails designated for recreational ATV use. A notice posted on a display board at the entrance indicated that all motorized trail users were required to have an Oregon ATV

Permit. Plaintiff rode his ATV past a gravel pile, which was "coned off," and up a second gravel pile, which was not. He was unable to stop at its crest, fell 15 to 20 feet, and seriously injured his shoulder. Plaintiff filed this action alleging the state's negligence in failing to warn, "cone off," or close the area.

After a hearing on the state's motion for summary judgment, the trial court considered the nature of the charge for an ATV operating permit and plaintiff's argument that it was a "charge" within the meaning of the exception to the statute's provision for recreational immunity. The court determined "that Plaintiff's ATV operator's [*sic*] permit was not a 'charge' to use the land for recreational purposes, but simply a permit to operate his ATV." The court concluded that recreational immunity applied and dismissed plaintiff's claim.

To allude to the statutes to be reviewed, we describe the question presented as whether a fee for a permit that allows the use of an ATV on lands open to ATVs can be characterized as a "charge" paid "in return for granting permission" to go upon "the land" where plaintiff was injured. In effect, we must determine whether an ATV operating permit is a fee paid for permission to use "the owner's land" or, instead, the permit is a form of registration of off-road vehicles for use on lands open to their use. The difference determines the viability of the state's defense of recreational immunity under ORS 105.682.

Our starting point is the legislature's policy to provide immunity to owners who allow recreational use of their land. In relevant part, ORS 105.682(1) provides:

> "[A]n owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, gardening, woodcutting or the harvest of special forest products."

The exception, on which plaintiff relies, appears in ORS 105.688(3), which provides, in relevant part:

"[T]he immunities provided by ORS 105.682 do not apply if the owner makes *any charge* for *permission* to use *the land* for recreational purposes, gardening, woodcutting or the harvest of special forest products."

(Emphases added.) The term "charge" is defined by ORS 105.672, which provides:

"As used in ORS 105.672 to 105.696:

"(1)   'Charge':

"(a)   Means the *admission* price or fee requested or expected by an owner *in return* for granting *permission* for a person to enter or go upon *the* owner's *land*."

(Emphases added.) The emphasized language makes express that a "charge" is a part of a *quid pro quo* arrangement. It is payment of an "admission price or fee" for "permission" to go on "the owner's land." Those terms in the immunity statutes set the standard by which we determine whether an ATV operating permit is a "charge" for permission to use "the land" where plaintiff was injured.

To make that determination, we consider the statute that requires an ATV operating permit. In relevant part, ORS 390.580 provides:

"(1)(a)   An all-terrain vehicle off-road operating permit issued under this section is a decal that *authorizes use* of the all-terrain vehicle for which it is issued *on trails and in areas* designated for such use *by the appropriate authority.*

"(b)   An all-terrain vehicle decal issued under this section must be permanently affixed to the vehicle and displayed in a clearly visible manner. The State Parks and Recreation Department shall prescribe by rule the manner in which the decal shall be displayed.

"* * * * *

"(4)   Application for an all-terrain vehicle off-road operating permit for a Class I, Class II, Class III or Class IV all-terrain vehicle shall be in a form furnished by the department. The application shall include:

"(a)   The name and address of the owner of the all-terrain vehicle; and

"(b)   The make and body style of the all-terrain vehicle for which application is made.

"(5)   The department shall establish by rule a fee for a permit issued or renewed under this section. The fee shall be *designed to cover the costs to the department for issuing or renewing permits under this section* but shall not exceed $10.

"(6)   Permits issued under this section are valid for two years."

(Emphases added.) As quoted, the emphasized language does not describe the particular lands where the permits apply, either by location or by the public or private nature of ownership. Nonetheless, the language is plain enough to determine that the statute does not make ATV permits applicable to state lands only, let alone to just the Tillamook State Forest or to only the Beaver Dam Stockpile area where plaintiff was injured. Rather, an ATV permit "authorizes use" of the ATV *wherever* an "appropriate authority" opens its land for ATV access. Although the statute does not go on to define or to limit the "appropriate authority" who may grant ATV access to a user, that term potentially encompasses any landowner.[1]

From the facts of this case, we know that the Oregon Department of Forestry (ODF) is among the Oregon landowners who have opened lands to ATV use. By administrative rule, ODF has provided that a person may not operate a vehicle off-road "[e]xcept on a trail designated for that purpose" and not "[w]ithout a valid ATV *registration.*" OAR 629-025-0070(1) (emphasis added). "Registration" is ODF's choice of words.

We recognize that the federal government is among Oregon landowners who have opened lands to ATV use. Under 36 CFR section 212.51, the "National Forest System" provides for motor vehicle use by vehicle class, and, under 36 CFR section 212.56, identifies vehicle use by maps to be

---

[1] An ATV operating permit (a vehicle sticker) is to be distinguished from an ATV operator permit (a person's card). Akin to a motor-vehicle driver license, ORS 390.570(1) provides that OPRD shall issue an ATV operator permit to persons who take an ATV safety education course or who are at least age 16 with five years' experience who pass an equivalency test. The operator permit is known as an ATV Safety Education Card and is required for ATV use "on public lands." OAR 736-004-0085(1).

available by websites.[2] Federal regulation dovetails with state law on off-road vehicles. In relevant part, 36 CFR section 261.15 provides:

> "It is prohibited to operate any vehicle off National Forest System, State or County roads:
>
> "(a)   [w]ithout a valid license as required by State law [or]
>
> "* * * * *
>
> "(i)   [i]n violation of State law established for vehicles used off roads."

Accordingly, the United States Forest Service (USFS) declares that "State laws regarding motor vehicle use such as age, safety equipment, and licensing requirements, apply on National Forest System roads." USFS, *OHV Use on National Forests in Washington and Oregon*, *available at* https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprd3799973.pdf [https://perma.cc/86C9-N5CH] (accessed August 27, 2021). The USFS advises, "All-Terrain Vehicle (ATV) Oregon law considers all vehicles intended for off-highway use to be all-terrain vehicles (ATVs)." *Id.* The USFS states that a "Class I ATV Sticker (Operating Permit) [is] required for all ATVs riding off-road *on public land*." *Id.* (emphasis added).

The OPRD, which issues ATV permits, tells the public that same thing about Oregon's ATV permits. OPRD advises, "The ATV Operating Permit, also known [as] ATV Sticker or Decal, is required when operating a Class I, II, III or IV ATV *on lands open to the public for ATV use*." OPRD,

---

[2]   In relevant part, 36 CFR section 212.51(a) provides:

> "Motor vehicle use on National Forest System roads, on National Forest System trails, and in areas on National Forest System lands shall be designated by vehicle class and, if appropriate, by time of year by the responsible official on administrative units or Ranger Districts of the National Forest System * * *."

And, in relevant part, 36 CFR section 212.56, provides:

> "Designated roads, trails, and areas shall be identified on a motor vehicle use map. Motor vehicle use maps shall be made available to the public at the headquarters of corresponding administrative units and Ranger Districts of the National Forest System and, as soon as practicable, on the website of corresponding administrative units and Ranger Districts. The motor vehicle use maps shall specify the classes of vehicles and, if appropriate, the times of year for which use is designated."

*All-Terrain Vehicles in Oregon, ATV Permits-Rules*, available at https://www.oregon.gov/oprd/ATV/Pages/ATV-permits. aspx [https://perma.cc/GF4B-VZRP] (accessed August 27, 2021) (emphasis added). OPRD adds that "[t]he U.S. Forest Service is currently designating trails, roads, and open areas for ATV riding." OPRD, *Where to Ride, Know Before You Go*, *available at* http://www.rideatvoregon.org/ wheretoride/view/dsp_wtr.cfm [https://perma.cc/U752-H5NJ] (accessed August 27, 2021).

Similar to the Oregon Driver Manual,[3] the OPRD publishes and posts a "2020 Oregon OHV Guide" that is offered as a "handbook" with an "explanation of laws and rules" along with a list of designated ATV sites provided by various landowners around the state. OPRD, *2020 Oregon OHV Guide*, 4 (2020), *available at* https://www.oregon.gov/ oprd/ATV/Documents/ATV-2020-Oregon-OHV-Guide-web. pdf [https://perma.cc/JBP7-D82Y] (accessed August 27, 2021); *see also Towe*, 357 Or at 91 n 6 (taking judicial notice of the Oregon Driver Manual). The Oregon OHV Guide boasts,

> "Oregon OHV opportunities are diverse. The state has over 54 designated trails systems and thousands of miles of dispersed trails and natural surface roads. You can ride sand dunes, open desert and wooded mountain trails. More than 60% of Oregon is public lands, meaning most designated riding areas are on public property."

*2020 Oregon OHV Guide* at 4. The guide describes the 54 designated ATV areas, listing one state park, three ODF areas, 10 county areas, two areas provided by private organizations, 10 areas provided by the U.S. Bureau of Land Management, and 28 areas provided by the USFS. *Id*. at 21-52. The listed 38 federal ATV areas greatly outnumber the four state ATV areas. *See id*.

It is no wonder that the number of federal ATV areas dwarf the number of state ATV areas. Taking judicial notice of almanac-type facts, we recognize that federal agencies own over 32 million acres of Oregon's 61.5 million

---

[3] Driver and Motor Vehicle Services, Oregon Department of Transportation, *2020-21 Oregon Driver Manual*, *available at* https://www.oregon.gov/odot/forms/ dmv/37.pdf [https://perma.cc/3XQZ-8WRW] (accessed August 28, 2021).

acres. That is nearly 53 percent of all Oregon lands.[4] In contrast, the State of Oregon—principally, its ODF, OPRD, Department of Fish and Wildlife, and Department of State Lands—own almost 1.8 million acres. That is 2.8 percent of all Oregon lands.[5] To take judicial notice of those facts is a sensible reality-check when we ponder the meaning of an ATV permit "issued on trails and in areas designated for such use *by the appropriate authority.*" ORS 390.580(1)(a) (emphasis added).[6]

Plaintiff argues that the fee for an ATV operating permit was a charge for permission to use the land, because ODF received grant funds from an OPRD ATV account. We know from ORS 390.580(5) that the $10 permit fee is designed to cover the costs to OPRD for issuing and renewing permits. We recognize that ORS 390.555 establishes an All-Terrain Vehicle Account as a separate account with OPRD, and there is an ATV Grant Subcommittee, created under ORS 390.565(5). ATV monies are granted to publicly and privately owned land managers and ATV clubs and organizations, support administration of the ATV operating permit, and implement safety and education requirements for ATV operation. *See* OAR 736-004-0005 (policy). In allocation of those moneys, the term "public lands" is defined by rule to include "publicly *and privately-owned land* that is open to the general public for the use of all-terrain vehicles." OAR 736-004-0015(42) (emphasis added).

---

[4] Congressional Research Services, *Federal Land Ownership: Overview and Data, Updated February 21, 2020*, 8, *available at* https://sgp.fas.org.crs.misc/R42347.pdf [https://perma.cc/ZQ9K-SC4L] (accessed August 25, 2021).

[5] Oregon Department of State Lands, *State of Oregon State Land Inventory System Report*, *available at* https://www.oregon.gov/dsl/Land/Documents/1SLIOwnershipStatewide.pdf [https://perma.cc/C44F-FJKG] (accessed August 25, 2021).

[6] Judicial notice is permissible with regard to facts not reasonably in dispute that are either generally known within the territorial jurisdiction of the court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. OEC 201(b); *see Bowden v. Davis et al*, 205 Or 421, 430-31, 289 P2d 1100 (1955) (taking judicial notice of the physical and geographic arid conditions in southeast Oregon); *Volny v. City of Bend*, 168 Or App 516, 519 n 2, 4 P3d 768 (2000) (taking judicial notice of the population of Bend); *Utterback v. Dept. of Rev.*, 17 OTR 276, 280 (2003) (taking judicial notice that most people who live in Oregon live on land once in federal ownership).

The monies are not restricted so as to return ATV permit fees only to the state agencies that grant ATV access. Instead, federal agencies, tribal governments, private landowners, and nonprofit clubs may be recipients too. OAR 736-004-0025(1). In short, the ATV fee serves a set of statewide purposes that is demonstrably larger than an "admission price or fee" paid "in return" for a particular landowner's "permission" to "go upon the owner's land." *See* ORS 105.672(1) (defining "charge").

Comparison is a useful exercise. The fees from ATV permits resemble the various fees paid for ordinary motor-vehicle registration, which are required to be dedicated to the State Highway Fund. *See* Or Const, Art IX, § 3a (requiring, among others, fees generated from "the ownership, operation or use of motor vehicles" to "be used exclusively for the construction, reconstruction, improvement, repair, maintenance, operation and use of public highways, roads, streets and roadside rest areas" within the state); *see Oregon Trucking Assns. v. Dept. of Transportation*, 288 Or App 822, 825, 407 P3d 849 (2017), *aff'd*, 364 Or 210, 432 P3d 1080 (2019) (reciting trust fund purpose). Those registration fees are required to be paid for vehicles operated on the highways of this state. *See* ORS 803.300 (offense of failure to register vehicle); ORS 803.315 (failure to pay appropriate registration fee); ORS 803.305(4) (exemption, among others, for a vehicle that "is not operated on the highways of this state").

Although payment of money is involved, we would not characterize a motor-vehicle registration fee as an "admission price or fee" paid "in return for the permission" of the highways' owners to go upon "the owner's land." *See* ORS 105.672(1) (defining "charge" for purpose of the exception to recreational immunity); *see also* ORS 801.050 ("Subject to compliance with the motor vehicle law of this state, owners and operators of motor vehicles are granted the privilege of using the highways of this state."). That is because motor vehicle registration does not involve "permission" in the ordinary sense with regard to particular lands by a particular landowner and because public highways are owned by or subject to various federal, state, and county authorities. *See, e.g.*, 23 USC § 103 (interstate highway system); ORS 366.220

(state highway system); ORS 368.016 (county authority over roads).

The same registration scheme exists for small boats that are noncommercial watercraft and are required to be registered for use "on the waters of this state." *See* ORS 830.770 (required certificate of number); ORS 830.775 (small watercraft registration). Fees are charged. *See* ORS 830.790 (biennial fees for registration and certification). The Oregon State Marine Board (Marine Board) oversees and distributes the Boating Safety, Law Enforcement, and Facility Account. *See* ORS 830.140 (describing the account and the board's authority). As with ATV fees, boating registration fees are distributed to entities in addition to the state agency overseeing state waters. ORS 830.150.[7] Here, again, we would not ordinarily consider such fees generated for registration of boats as an "admission price or fee" paid to the Board "in return for the permission" to use the waters subject to the control of various local, state, or federal authorities.

Those parallel statutes—governing boat and motor-vehicle registration—provide a statutory context for the question whether an ATV operating permit is a user fee or merely is another kind of registration fee. Those statutes are context because they are statutes *in pari materia*— statutes that demonstrate how ordinary registration works. *See generally State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"); *Weems/Roberts v. Board of Parole*, 347 Or 586, 595, 227 P3d 671 (2010) (reliance on other, related statutes). Those parallel statutes intimate that the ATV operating permit is a kind of registration for off-road vehicles.

With that perspective, we return to our starting point to determine whether an ATV permit is a user fee paid in exchange for permission to use the property on which plaintiff was injured or is instead a form of vehicle

---

[7] Like ATV permit fees, ORS 830.150(1) instructs the Marine Board that:

"Amounts remaining in the Boating Safety, Law Enforcement and Facility Account in excess of funds obligated under ORS 830.140 (2) shall be distributed, upon application, to a federal agency, the state, a city, county, water improvement district, park and recreation district or a port. Distribution shall be made on the basis of need for a facility as that need appears to the State Marine Board."

registration authorizing use of an ATV wherever ATV use is permitted on public properties or other permissive properties. The answer follows from construing these terms: Recreational immunity does not apply "if the owner makes any charge for permission to use *the land*." ORS 105.688(3) (emphasis added). And, a charge "means the *admission* price or fee requested or expected by an owner *in return* for granting *permission* for a person *to enter or go upon the owner's land*." ORS 105.672(1)(a) (emphases added).

Given those terms, we conclude that the exception to recreational immunity does not apply to the fee for an ATV permit. That is because, with an ATV permit, there is no *quid pro quo*, and there is no particular land involved. The state, or its ODF, does not "request or expect" from "a person" an "*admission* price or fee," which is "in *return*" for "*permission*" to use "*the* land." *See* ORS 105.682(1) ("person"); ORS 105.688(3) (other terms); ORS 105.672(1) (other terms) (emphases added). Plaintiff was not charged a user fee specific to the Tillamook State Forest or its Beaver Dam Stockpile area. Even if all state lands were seen as one parcel, plaintiff was not charged a user fee for the use of state lands. The permit involves more than just state lands. Plaintiff was charged a fee for an ATV permit as an ATV *owner* for the potential that whoever operates it may use it *anywhere* where that ATV is permitted to be used by any "appropriate authority." *See* ORS 390.580(1)(a) (requiring ATV operating permit for use "in areas designated for such use by the appropriate authority"). An ATV operating permit is a form of a "registration" for an ATV—the term that ODF uses in its own rule. *See* OAR 629-025-0070(1)(d) (referring to ATV "registration"). Consequently, the exception to recreational immunity in ORS 105.688(3) does not apply here.

That conclusion is not precluded by the decision of the Oregon Supreme Court in *Coleman v. Oregon Parks and Recreation Dept.*, 347 Or 94, 217 P3d 651 (2009), the decision on which plaintiff relies. That case involved a charge paid in exchange for permission for a particular recreational use at a specific property. The plaintiff had paid a camping fee for a part of Tugman State Park and was injured while riding a bicycle on a park trail. *Id.* at 99-100. The court concluded that immunity did not apply because the plaintiff had paid a

charge for *a* recreational use at the park where the plaintiff was injured. *Id.* at 103-04. That said, nothing in *Coleman* suggests that the exception to recreational immunity concerns a fee that is *not* tied to particular state lands or, indeed, that is not tied to state lands at all. *See id.* (concerning the term "the land" in ORS 105.688(2)(a)). *Coleman* is inapt.

The difficulty with plaintiff's view is it dispenses with the *quid pro quo* character of an exchange for permission to use the particular land on which plaintiff was injured. As the state argues, plaintiff's theory would make a fishing license seem to be a "charge" eliminating recreational immunity on state lands and waters. Candidly, plaintiff agrees. To suggest that plaintiff's view may be broad is not to criticize plaintiff who would prefer that his case be decided by a jury who can assess comparative fault according to the facts of the case. Here, however, the legislature set public policy when it created recreational immunity for the purpose of encouraging wider use of lands for recreational purposes. The legislature's preference controls.

Having created recreational immunity, the legislature made an exception for the situation in which a person pays a charge in return for permission to use the land at issue. *See* ORS 105.688(3) (exception); ORS 105.672(1) (charge). But that exception does not apply here. The fee for ATV registration is not a "charge" paid "in return" for use of "the land" where this plaintiff was injured. *See* ORS 105.688(3) (exception); ORS 105.672(1) (charge defined). The trial court did not err in reaching that conclusion and granting summary judgment.

Affirmed.