258 April 24, 2024 No. 270

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Aisling Tucker MOORE-REED,
*Plaintiff-Appellant,*

*v.*

Anthony GRIFFIN,
*Defendant-Respondent.*

Jackson County Circuit Court
21CV26445; A177496

Timothy C. Gerking, Judge.

Argued August 23, 2023.

Larry R. Roloff argued the cause and filed the briefs for appellant.

Julie A. Smith argued the cause for respondent. Also on the brief was Cosgrave Vergeer Kester LLP.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

This is a civil case based on a legal theory of professional negligence. Plaintiff seeks damages from the attorney who represented her in a criminal case in which she was charged with first and second-degree manslaughter and murder.[1] The trial court concluded that plaintiff's legal negligence claim was foreclosed by *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993), and it granted summary judgment to defendant. Plaintiff appeals the general judgment that was entered thereafter. We affirm.

We review a trial court's decision on a motion for summary judgment for legal error. *Stedman v. Dept. of Forestry*, 316 Or App 203, 204, 502 P3d 234 (2021). We view the facts in the light most favorable to plaintiff, the nonmoving party, to determine whether there was a genuine issue of material fact that would preclude summary judgment and whether defendant was entitled to prevail as a matter of law. *Stevens*, 316 Or at 223; ORCP 47 C.

A full recitation of the facts underlying plaintiff's claim would not benefit the parties, the bench, the bar, or the public. We describe only those facts that are necessary to explain our decision.

Plaintiff was charged with first and second-degree manslaughter after she shot her uncle at her grandmother's home. Just before the shooting, plaintiff used her cellphone to record a video of her uncle attempting to convince her grandmother to convey ownership of her farm to him. After plaintiff was arrested, police seized the cellphone and, after finding nothing of interest to them on it, turned the phone over to plaintiff's attorney.

After plaintiff's criminal defense attorney—the defendant in this case—viewed the video on the phone, he sent the video to the District Attorney's office. The prosecutor in turn took the video to a grand jury and successfully requested that it add a murder charge to plaintiff's case. Once plaintiff was charged, her release agreement was revoked, and she was returned to jail and held without bail.

---

[1] The underlying criminal case is Jackson County Circuit Court Case No. 16CR46418.

Eventually, plaintiff pleaded guilty to second-degree man-slaughter and was convicted of that crime.

Following her conviction, plaintiff filed this case, alleging that defendant "was negligent" in providing legal services to her in the criminal case because, among other things, he "provid[ed] the district attorney's office the poten-tially incriminating evidence" on her phone and because he failed to consider the possible result of "additional and more serious charges" that "could arise from providing [that] evi-dence." She alleged that defendant's negligent conduct "com-pletely altered the dynamics of the legal situation \* \* \*, forc-ing her into a highly disadvantaged position" in which she was more inclined "to plead to manslaughter in the second degree" than to go to trial and that, as a result, she suffered "damages to her reputation, finances, and emotional and mental health."

Defendant moved for summary judgment, arguing that under *Stevens*, no issue of material fact existed because plaintiff had not been exonerated of any criminal conviction and, therefore, had suffered no harm. Because harm is a necessary element of any negligence claim, the trial court granted defendant's motion, and plaintiff now appeals.

The parties focus their arguments on the Supreme Court's decision in *Stevens*. *Stevens* is a legal negligence case that was filed "by a former criminal defendant against the lawyer who defended him" after another person confessed to the crimes for which the defendant had been convicted. 316 Or at 223. The criminal defense lawyer moved for summary judgment on grounds that the civil case was time-barred, but the trial court denied the motion, reasoning that the statute of limitations did not begin to run until the plaintiff became aware of the harm, which did not occur until the plaintiff had been exonerated of the crime. *Id.* at 239.

As the court explained, the "choice of what con-stitutes legally cognizable harm is a policy choice." *Id.* at 229. That choice, in the context of a negligence case filed by a former criminal defendant against his or her criminal defense lawyer for legal services rendered in a case where the negligence is alleged to have contributed to the person's

conviction, "is informed by the comprehensive legislative scheme that constitutes the substantive and procedural criminal law in Oregon." *Id.* The court emphasized (1) the "wide range of procedural protections" already afforded to criminal defendants, (2) the legal presumption that a person convicted of a criminal offense is guilty of that offense and should not be permitted to relitigate the matter without first overturning the conviction, and (3) the principle that a person convicted of a crime is deemed guilty of that crime regardless of whether the conviction resulted from a jury trial or a bench trial, or from the defendant's guilty plea made following or pursuant to negotiations. *Id.* at 230-32. On that third point, the court explained that civil relief for professional negligence should not be available to offenders who complain that their lawyer failed to get them a "better deal," because a convicted offender cannot have been legally harmed "by any disposition of that person's case that was legally permissible." *Id.* at 232. Plaintiff's attempt to distinguish *Stevens* because she is claiming harm from "the indictment itself" rather than from a "guilty verdict" misreads what *Stevens* says.

*Stevens* is unequivocal:

"We hold that, in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise."

*Id.* at 238. Here, defendant was convicted of a criminal offense and claims that her attorney's negligence contributed to her conviction. Thus, under *Stevens*, she cannot allege harm for purposes of a professional negligence claim until she has "been exonerated" of the crime of which she was convicted. Plaintiff has not been exonerated of any crime.

We reject plaintiff's argument that *Stevens* "was bad law from the day it was decided." But even if we were inclined to agree with her on that point, contrary to plaintiff's urging, we lack the authority to overturn Supreme Court precedent. *State v. DeJong*, 368 Or 640, 646 n 5, 497

P3d 710 (2021). We also reject plaintiff's assertion that she "met her burden under *Stevens*" because she was "exonerated of the charged offense of murder." That is not so. The murder charge was simply dismissed as part of a plea negotiation. *Stevens* limits legal negligence cases against criminal defense attorneys to those in which there was a wrongful conviction followed by a later exoneration. That is not this case.

Affirmed.