No. 430 May 20, 2026 673

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Lina FIAL,
nka Lina Pardo Arias,
*Petitioner-Respondent,*
*and*

John David FIAL,
*Respondent-Appellant.*

Multnomah County Circuit Court
22DR20256; A184041

Christine A. Martin, Judge.

Argued and submitted October 15, 2025.

Andrew W. Newsom argued the cause and filed the briefs for appellant.

Rachael Federico argued the cause for respondent. Also on the briefs were Courtney A. Crowe and Legal Aid Services of Oregon.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Vacated and remanded for reconsideration of the property division; otherwise affirmed.

**SHORR, P. J.**

In this appeal from a judgment of dissolution, husband challenges the trial court's equal division between husband and wife of cryptocurrency that was acquired during their marriage. In his first assignment of error, husband argues that the trial court erred in concluding that husband had failed to rebut the presumption of equal contribution as to the cryptocurrency. In the second assignment, husband contends that the trial court erred in dividing the assets equally with wife, because it was not just and proper to do so. For the reasons discussed below, we agree with husband that the trial court erred in concluding that husband had failed to rebut the presumption of equal contribution. As a result, we do not need to reach the second assignment of error. We vacate the trial court's judgment and remand so that the court can exercise its discretion to consider anew, without regard to the presumption of equal contribution, a just and proper division of the cryptocurrency assets and the overall property division.

We state the key facts central to our analysis. Husband and wife married in 2016 and their marriage ended by the dissolution judgment entered in 2024. Wife was originally from Colombia but moved to the United States. The parties have one child who was five years old at the time of dissolution.

Prior to their marriage, husband had his own separate retirement accounts. During the marriage, husband withdrew some money from those accounts and used it to purchase cryptocurrency. Significant to our analysis, husband presented evidence that nearly all of the cryptocurrency purchases were directly traceable to his original separate retirement accounts.[1] He testified that he purchased the cryptocurrency as a long-term investment. Wife had no control of or management over the financial accounts but was occasionally informed of the balances in the accounts.

---

[1] The parties appear to agree that a small portion of cryptocurrency, specifically a deposit into the cryptocurrency account of $4,116.98 of Bitcoin in 2020, might have been purchased with and directly traceable to wife's earnings during the marriage. The trial court did not make factual findings on that point, but will have the opportunity to do so on remand and make a property division determination accordingly.

There was evidence that wife was aware of the financial accounts and considered it family money, but she does not point to evidence in the record that she played any role in the investment decisions outside of being consulted on charitable donations from the cryptocurrency account. Husband did not actively manage the cryptocurrency account but rather allowed its value to appreciate passively. The cryptocurrency appreciated significantly.

Before the parties had their child, they lived in New York where wife worked multiple jobs while husband did not have an income and was writing a book. Husband would occasionally sell the cryptocurrency and move the proceeds into a checking account that was used to pay shared family expenses, including rent, food, and entertainment. Although husband was not earning an income while writing a book, the parties had the proceeds from the cryptocurrency sales and some income from wife to fund their lifestyle. Husband testified that it was his intent to use the funds withdrawn from the cryptocurrency account to pay for family living expenses and share the wealth with his wife, but that he considered the balance remaining in the account to be his separate asset.

Husband continued to work on his book after the family moved to Portland. Later, in 2021, husband obtained a job at Intel. Wife continued to do some outside work as a nanny after their child's birth and her income went directly to her husband's PayPal account. Husband, however, discouraged wife from taking another job or pursuing a career after he started working at Intel. Wife was the primary homemaker and then, after their child's birth, the primary caretaker of the child, facts which husband does not dispute. Husband managed the family finances. At the time of dissolution, husband's cryptocurrency was worth approximately $161,000.

On those facts and others in the record, the trial court concluded that husband had not rebutted the presumption of equal contribution as to the cryptocurrency assets. In its oral and written findings, the court noted that husband had taken money from a premarital account and used it to purchase the cryptocurrency. It found that

husband had used the proceeds from the cryptocurrency account for joint and family expenses and further credited husband's testimony that he intended to share that money with his wife. The court concluded that wife contributed to the cryptocurrency through her earnings and her role as a homemaker. The court also concluded that an equal division of those assets was "fair and just."[2]

As noted, husband assigns error to the equal division of the cryptocurrency in the dissolution judgment, contending first that the court erred in concluding that he had failed to rebut the presumption of equal contribution and next that it is not "just and proper" for wife to have half of those assets. We review a trial court's division of property for abuse of discretion and do not disturb the division unless the court misapplied the statutory or equitable factors under ORS 107.105(1)(f). *Majhor and Majhor*, 332 Or App 736, 739, 552 P3d 140 (2024). We are bound by the express and implicit factual findings of the trial court if they are supported by any evidence in the record. *Morgan and Morgan*, 269 Or App 156, 161, 344 P3d 81, *rev den*, 357 Or 595 (2015).[3]

Trial courts are to divide property in a dissolution according to ORS 107.105(1)(f) as construed in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). The first step is to determine the type of marital property at issue. If the parties acquired the property during the marriage, it is a "marital asset" and the court applies the presumption of equal contribution under ORS 107.105(1)(f), which presumes the parties contributed equally to its acquisition. *Kunze*, 337 Or at 133-134. Husband does not appear to contest that the cryptocurrency, acquired during the marriage, and its appreciation was a marital asset.

The party challenging the presumption of equal contribution, here husband, must show by a preponderance of the evidence that the other spouse's efforts did *not* contribute equally to the acquisition of the marital asset. *Id.* at 134.

---

[2] We understand this to be a reference to the legal test for a division of property in dissolution to be "just and proper." The parties before us do not contend otherwise.

[3] Husband does not request *de novo* review and we do not undertake such review.

Relying on *Kunze*, we have concluded that "absent other considerations, the just and proper division" of assets subject to the presumption of equal contribution is an "equal division." *Morgan*, 269 Or App at 162 (internal quotation marks omitted). If a party rebuts the presumption, the court decides, in its discretion, how to distribute the asset without regard to any presumption, based on what is "just and proper in all the circumstances," including the proven contributions of the parties to the asset. *Kunze*, 337 Or at 135. The equitable considerations vary based on individual circumstances, but, under ORS 107.105(1)(f), they

> "include the preservation of assets; the achievement of economic self-sufficiency for both spouses, the particular needs of the parties and their children, and *** the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling."

*Id.* at 136. The "acts of commingling may operate to convert a separately acquired asset into a joint asset of the marital partnership." *Id.* at 139.

Turning to husband's first assignment of error, we agree with husband that the trial court erred in concluding that husband failed to rebut the presumption of equal contribution as to the cryptocurrency account.[4] As a general rule, whether a party has overcome the presumption of equal contribution during the marriage is a question of fact. *Craven and Craven*, 326 Or App 709, 716, 533 P3d 818 (2023). However, there are "situations when the underlying facts are not in dispute and the question instead is whether the trial court misapplied the law." *Id.* We conclude that is the situation here.

On this record, the trial court erred in concluding that husband failed to demonstrate "by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset." *Kunze*, 337 Or at 134. The cryptocurrency account can be directly traced to husband's

---

[4] As noted above in footnote 1, a $4,116.98 portion of the original Bitcoin purchases might have been purchased with wife's earnings during the marriage. We do not include that portion of cryptocurrency and its appreciation in our analysis.

premarital retirement accounts and the appreciation in value of the cryptocurrency occurred passively. *See id.* at 144-45 (concluding that the wife had overcome the presumption of equal contribution where "wife presented undisputed evidence that the equity at issue *** had originated solely from her separate funds"); *Wolfe and Wolfe*, 248 Or App 582, 595, 273 P3d 915, *rev den*, 352 Or 266 (2012) (the husband rebutted the presumption of equal contribution where his entire interest in the investment account was "traceable to his premarital interest in the property *** and the appreciation during the marriage occurred passively and independent of any contribution of either husband or wife"). To the extent that wife contributed by working both inside and outside the home during the years husband did not work, the record does not demonstrate that those efforts contributed equally to the acquisition of the cryptocurrency where the purchases can be directly traced to husband's separate assets and neither party contributed to its appreciation. *See, e.g.*, *Hixson and Hixson*, 235 Or App 217, 227, 230 P3d 946, *clarified on recons*, 235 Or App 570, 232 P3d 996 (2010) (concluding that the wife's overall contribution was less than equal).

Wife also points to *other* evidence that the cryptocurrency assets were intended to be shared, supported the family, and were used for joint expenses. That presents an issue that generally goes to the second step, the just and proper determination, absent evidence that the assets were so commingled that it is impossible to define the separately acquired assets from the joint assets of the marital partnership.

There is no evidence that the couple's financial contributions to the cryptocurrency account were so commingled that the trial court could not trace the cryptocurrency account to husband's original premarital retirement accounts. *See Kunze*, 337 Or at 137-38 (noting that commingling may be part of the first step if a spouse has so commingled a separately acquired asset with joint assets of the marital partnership that it makes identification of the separate asset "so unreliable as to defeat any claim on that spouse's part of an unequal contribution by the other

spouse"). Indeed, the cryptocurrency assets were nearly entirely traceable to husband's premarital retirement portfolio. Applying those principles, the trial court erred at the first step in concluding that husband had not rebutted the presumption of equal contribution.

This case should be remanded for further proceedings on the property division. That is not to say that the trial court is prohibited from reaching any particular result or from considering the parties' treatment of the cryptocurrency funds as family assets *after* proceeding to step two of the analysis, but only that it must proceed in its exercise of discretion at step two "without regard to any presumption and, instead, consider[ing] only what is 'just and proper in all the circumstances,' including the proven contributions of the parties to the asset." *Kunze*, 337 Or at 135. The trial court should proceed to step two and analyze the equitable considerations that are at play in this case and resolve the just and proper issue based on the analysis above. 349 Or App at 677.

Vacated and remanded for reconsideration of the property division; otherwise affirmed.